|    |     |
|----|-----|
| 36 | 863 |
| 36 | 869 |

HENRY & COATSWORTH COMPANY, APPELLANT, v. D. R. McCURDY ET AL., APPELLEES.

FILED MAY 2, 1893.   No. 4696.

1. **Mechanics' Liens**: PRIORITY: PROOF.   In a suit to foreclose a mechanic's lien, where other incumbrancers by answer deny the facts necessary to create the lien, it is necessary for the mechanic's lienor, in order to establish his lien as prior to such other incumbrances, to prove such facts, including the time of commencing labor or of furnishing material.

2. **Pleading**: MORTGAGE FORECLOSURE.   An objection to the omission in a petition to foreclose a mortgage, of the averment that no proceedings have been had at law for the collection of the debt secured thereby, must be made prior to the rendition of a decree, as it relates to matter in abatement, and not to a fact affecting the validity of the mortgage.

3. ———.   Whether a petition may at any time be attacked because of the omission of such averment, by another incumbrancer seeking to foreclose his lien in the same action, *quære*.

APPEAL from the district court of Lancaster county. Heard below before CHAPMAN, J.

*Samuel J. Tuttle*, for appellant.

*Leese & Stewart, H. F. Rose,* and *Atkinson & Doty, contra.*

IRVINE, C.

The plaintiff commenced this action for the purpose of foreclosing a mechanic's lien which it claims upon lots 6 and 7, in block 101, of University Place, Lancaster county. The defendant, the Building & Loan Association of Dakota, filed its answer setting up a mortgage upon the same property, executed to it by the defendant Starr, to secure a loan from the association to Starr. The defendant, the Wesleyan University, filed an answer and cross-petition setting up a mortgage to it to secure unpaid purchase money upon the property, and praying a foreclosure. The defendant Starr seems to have filed an answer, but by leave of the court withdrew it before trial. The other defendants seem not to have appeared. The decree adjudges the mortgage of the building association to be a first lien upon the premises; that of the Wesleyan University a second lien, and establishes the lien claimed by plaintiff as a third lien. The plaintiff appeals, and the only questions presented relate to the priorities of these three incumbrances. A number of questions are presented in the arguments of the parties, but a consideration of two of them disposes of the case. The existence of the lien claimed by plaintiff was denied by the answers of both the Building & Loan Association and the university. The answer of the Building & Loan Association denies generally every allegation in the petition not in the answer expressly admitted, and makes no admission upon the subject except an argumentative admission that some lumber was furnished at some time for the erection of a building upon the lots described. The answer of the university in terms denies each averment of the petition in regard to the selling, furnishing and delivery of material by the plaintiff. The facts constituting a lien in favor of plaintiff were therefore put in issue by both these defendants, and it devolved upon the plaintiff to establish among other things that it furnished

the material described in its petition, or at least some portion thereof, for the erection of the house upon the premises described, and that it furnished such material, or began to furnish the same, at such a time as to entitle it to the priority claimed by it over the mortgages of the answering defendants.

Mr. Doolittle, the manager of plaintiff company, testified in direct examination that plaintiff furnished lumber to Starr & McCurdy for building houses upon the lots mentioned; that this was done during the season of 1889, "something previous to January 1. I do not remember the exact date, but I think in September, and about the commencement of the account." That this lumber was furnished according to the days and dates of the itemized account. On cross-examination he states:

A. I know the lumber was delivered there.

Q. Delivered where?

A. At the houses.

Q. At these three houses?

A. Yes, sir.

Q. How do you know that fact?

A. I know from our teamsters and delivery tickets, etc.

Q. Did you have no personal knowledge about it?

A. No, sir; no further than that.

Q. So, that so far as this material is concerned as to its getting into these houses, you have no knowledge on the subject?

A. No personal knowledge.

Again:

Q. I believe you testified in your cross-examination that you had no personal knowledge of any of this material being delivered to this property to be put into these houses?

A. I did not go with the material.

Q. You do not know whether it was taken there or not of your own knowledge?

A. No, sir; not of my own knowledge.

58

Q. Did you keep the books of the Henry & Coatsworth Company?

A. No, sir.

Q. Have you any personal knowledge as to whether this account, as to the items, and as to the time they purport to have been delivered—whether it is correct?

A. Nothing only as comes from my books.

Q. And you do not know whether they are kept correct or not? You did not keep them?

A. No, sir; I didn't keep them.

Q. Then, as a matter of fact, you don't know whether these items were furnished at the time the lien indicates or not?

A. Only what the books indicate.

Q. Only as you hear from others—you can't testify as to the correctness of the books?

A. No, sir; I have a book-keeper, and that is his business.

Q. Did you make out these accounts?

A. No, sir; they are made out by the book-keeper. That is supposed to be a copy of our book.

Q. Do you know whether it is a copy of your books or not—of your own knowledge?

A. I do not. I could not swear that it was.

At a later point in the trial certain books were produced by Doolittle, and, after some preliminary testimony, offered in evidence. They were excluded, and properly excluded, and no exception was taken.

There was also testimony from Mr. Doolittle showing the method of keeping the books and disclosing the fact that the plaintiff did have in its possession delivery tickets, which might, at least, have been used as memoranda to refresh the memory of the proper witnesses had they been called. Mr. Gascoigne was called and testified that it was his business to superintend all the loading and making out the dray tickets and to watch the men, and to make entries

in the books of original entries as to the lumber that goes out. His examination stops at that point and no facts relating to this transaction were sought to be elicited from him. The defendant Starr was called by the plaintiff, he being one of the persons who contracted for the lumber and built the houses. He testifies that the plaintiff rendered an account of the lumber, but that it was not correct; that it was figured too high, and there were mistakes in the items, amounting in all to three or four hundred dollars. He further testifies that he is not able to state when the lumber was delivered, or whether any of the items were correct, because lumber was being furnished for a number of houses, and the plaintiff was constantly delivering lumber to houses other than that for which it was ordered, requiring frequent interchanges of lumber delivered at one place to another. McCurdy corroborates Starr as to mistakes in the account.

The foregoing is the substance of all the testimony upon the subject. It will be seen that Mr. Doolittle's testimony was the purest hearsay and cannot be considered; and the only other testimony tends to discredit instead of to support the bill of items attached to the petition. There is an absolute and total failure of evidence to show that any particular item of material was ever furnished for this house, to say nothing of the time of delivery. The mortgages became liens upon the property upon the 6th of December, 1889, at the latest, and it was necessary for the plaintiff to prove that material was furnished before these liens were filed for record.

Another point suggested in the briefs perhaps requires notice. The cross-petition of the Wesleyan University contains no averment as to whether any proceedings had been had at law for the recovery of the debt. Such an averment is required by section 850 of the Code. No objection was raised to the cross-petition in the court below upon this ground, so far as the record discloses, and it cannot

for the first time be raised here. If there was a failure to allege a fact essential to this defendant's case, an exception to the rendition of judgment upon its cross-petition might present the question for review, but we do not regard this allegation so essential as to invalidate the judgment rendered upon a petition not containing it. In *Carlow v. Aultman*, 28 Neb., 672, it was held that the omission of this allegation was not sufficient ground to authorize the district court to open up a judgment after the term at which it was rendered. This conclusion could hardly have been reached had the court considered the averment in question one necessary to the support of the judgment. The pendency of proceedings at law to recover the debt secured by mortgage is under our law in fact merely matter in abatement, which the Code requires to be negatived in the petition. It is not matter in bar, and does not affect the validity of the mortgage. It may indeed be questioned whether an incumbrancer seeking to establish and foreclose his incumbrance in the same action could at any time raise the question, the provision being for the benefit of the mortgagor.

The lien of plaintiff stood confessed by the failure of the owners of the property to answer the petition, and there was some evidence tending to show that they had admitted the amount claimed to be correct. While these admissions could not be received as against the mortgagees, and do not affect the question first discussed in this opinion, they were sufficient to ascertain the amount due as against the owners, and the lien was therefore properly allowed as one junior to the mortgages. The decree of the district court was right and is

AFFIRMED.

THE other commissioners concur.