STATE OF NEBRASKA, APPELLEE, V. TERESSA BEST ET AL.,
APPELLANTS.
113 N. W. 2d 650

Filed March 9, 1962. No. 35135.

C. *Morris Gillespie* and *Kenneth H. Dryden,* for appellants.

*Clarence A. H. Meyer,* Attorney General, *Melvin K. Kammerlohr,* and *Robert A. Munro,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action brought by the county attorney of Buffalo County, charging the five minor children of Lavern and Grace Best with being neglected and dependent children, and praying that such children be committed to the Nebraska Home for Children or some suitable place or home as might be determined by the juvenile court. The action was brought in the county court of Buffalo County on January 16, 1961. On January 31, 1961, hearing was had in the county court of Buffalo County. The following persons were present in court: Teressa Best, born April 13, 1950; Allen Best, born September 29, 1953; Linda Best, born August 5, 1955; Colleen Best, born July 26, 1956; Randall Best, born October 10, 1959; Lavern Best, the father of the children; Grace Best, the mother of the children; the attorneys

for the parents of the children; the persons having the temporary custody of the children; and other persons presumably witnesses. No record of the testimony was made in the county court. Hearing was had, and the court found that proper service had been had on all interested parties, and from the evidence that the allegations of the petition were true; that the children were neglected and dependent under the laws of the State of Nebraska; and that it was to the best interests of the children that custody be taken. The children were committed to the Board of Control, with full rights of placement and adoption. The court ordered that the children be taken to the Nebraska Home for Children at Lincoln, Nebraska. This commitment was filed January 31, 1961.

A mittimus was issued out of the county court of Buffalo County, and the return on the mittimus shows that Teressa Best and Allen Best were delivered to the Home for Children, and Linda Best, Colleen Best, and Randall Best were delivered to the foster care unit. This return was filed in the county court on February 2, 1961. Lavern Best, father and natural guardian of the children, for himself and his wife Grace Best, appealed to the district court for Buffalo County.

The cause was tried in the district court on June 1 and 2, 1961. On June 22, 1961, the trial court found that all five children were, on the date of the filing of the complaint in the county court of Buffalo County, neglected and dependent children; and that the court retained custody in itself of the following children: Teressa Best, Allen Best, and Linda Best. The court temporarily placed the custody of these children with the parents, Lavern Best and Grace Best, based upon the following conditions: That the parents agree in writing that they would stay out of the Veterans of Foreign Wars Club in Kearney, Nebraska; that they would allow Mrs. Bess Simmerman, or a caseworker for the Buffalo County assistance office, to enter their home at

any time, day or night, to make an investigation on behalf of the court to see that said children were properly cared for; and that if it appeared that these children had been well taken care of for a period of 2 years, then the court would at that time review whether or not the children should be permanently removed from the list of neglected and dependent children. With respect to Colleen Best and Randall Best, the district court found that the order of the county court placing them in the custody of the Nebraska Board of Control should be approved and said board should be directed to place said children out for adoption. Judgment was rendered in accordance with the findings.

Lavern Best and Grace Best, as parents of Teressa, Allen, and Linda Best, approved and consented to the findings and order of the court pertaining to the above-named children. Such order of the court has heretofore been mentioned. Lavern Best and Grace Best stated that they understood that this consent had no bearing on the court's findings and order pertaining to the other two children, Colleen and Randall Best.

A motion for new trial was filed in behalf of the children, but there was no ruling on the motion.

For convenience we will refer to the State of Nebraska as the plaintiff, to the children as defendants or by their names as required, and to the parents by their first names.

The defendants set forth the following assignments of error: That the trial court erred in assuming jurisdiction of defendants or other interested parties without proper service of process; that the trial court erred in rendering judgment on an insufficient petition based on conclusions; that the trial court erred in making its order and judgment contingent upon the consent of the parents of the defendant children; and that the findings and judgment of the trial court are inconsistent in themselves, and not substantiated by the pleadings and evidence.

Section 43-201, R. R. S. 1943, provides in part: "As

used in sections 43-201 to 43-221, unless the context otherwise requires: * * * (2) Dependent child shall mean any child under the age of eighteen years, who is homeless or destitute, or without proper support through no fault of his parent, guardian, or custodian; (3) Neglected child shall mean any child under the age of eighteen years (a) who is abandoned by his parent, guardian, or custodian; (b) who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian; (c) whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such child; * * * (5) Parent shall mean one or both parents."

Section 43-206, R. R. S. 1943, provides in part: "Upon the filing of the complaint, a summons shall issue requiring the person having custody or control of the child, or with whom the child may be, to appear with the child at a place and time stated in the summons, * * *. The parents of the child, if living, and if their residence is known, * * * shall be notified of the proceedings, * * *."

Section 43-210, R. R. S. 1943, provides in part: "In the case of a delinquent, neglected or dependent child, the court may continue the hearing, from time to time, and may commit the child to the care or custody of a probation officer, and may allow said child to remain in its own home, subject to the visitation of the probation officer, such child to report to the probation officer as often as he may be required, and subject to be returned to the court for further or other proceedings whenever such action may appear to be necessary; * * *."

The foregoing sections of the statutes are applicable to the case at bar. The following are also applicable.

In Krell v. Sanders, 168 Neb. 458, 96 N. W. 2d 218, it is said: "An appeal from a finding and adjudication of the district court by authority of section 43-202, R. R. S. 1943, that a child is a delinquent is disposed of

in this court by trial de novo upon the record." This rule also applies to children who are charged with being neglected and dependent. The court said further: "This court on the trial of a cause de novo takes cognizance of only legal evidence in the record and gives no consideration to incompetent or irrelevant matters therein."

In the instant case the defendants make objection to the type of process served on the parents of the children, in that such process was in the form of a subpoena and not a summons as required by section 43-206, R. R. S. 1943. The words "to give evidence in a suit between" and "on the part of the said" were crossed out on this process, which would negative or destroy the form as a subpoena. The parents received notice as required by section 43-206, R. R. S. 1943, although they did not have custody of the children at the time of the hearing in the county court. They were not deceived or misled by the process served upon them.

In the case of State v Andersen, 159 Neb. 601, 68 N. W. 2d 146, cited by the defendants, the parents were never notified in any manner of the proceedings, nor did they make an appearance. And in the case of State v. Roth, 158 Neb. 789, 64 N. W. 2d 799, cited by the defendants, the transcript failed to disclose that section 43-206, R. R. S. 1943, had been complied with. Nor was there anything to show any type of service upon the parents of the boys being charged with being delinquent. The present case discloses a different situation. The parents appeared in the county court with their counsel, made no objection to the form of process, and appealed this matter to the district court. In this situation we believe the following is applicable.

In 72 C. J. S., Process, § 113, b., p. 1168, it is said: "A failure to assert a defect or irregularity by a timely and appropriate plea or motion is usually regarded as a waiver. Defects in process or service may also be waived by defendant's participation in the trial on the merits

of plaintiff's cause of action, by the filing of an answer, by giving a stipulation to answer judgment, * * *."

In the instant case the defendants stipulated that a general denial would be considered filed as against the plaintiff's petition. The record shows that the defendants, their parents, and their counsel failed to object to the form of process before the submission of the cause, and therefore we conclude that they have waived any defect in the summons or notice.

The defendants object to the sufficiency of the pleadings, in that the pleadings were insufficient because the facts were not set forth showing in what manner the children here involved were neglected or dependent children within the meaning of section 43-201, R. R. S. 1943. No objection was made at any stage of the proceedings to the sufficiency of the petition until after the judgment of the trial court had been rendered.

This court held in Irwin v. Gould & Son, 99 Neb. 283, 156 N. W. 503, that when a petition was not attacked in the lower court by either motion or demurrer, nor any defense to the alleged omission pleaded in the answer, it may be upheld under the long-established rule that, when timely objection is not made, pleadings when possible, will be sustained. There are other cases to the same effect. See, O'Donohoe v. Polk, 45 Neb. 510, 63 N. W. 829; Henry & Coatsworth Co. v. McCurdy, 36 Neb. 863, 55 N. W. 261.

We conclude that under the circumstances, the defendants' contention is without merit.

The record discloses that on March 6, 1947, Lavern Best and Grace Covert were married at Phillipsburg, Kansas. They lived in Kearney most of the time after their marriage.

A caseworker testified that from September 1960, through January 1961, Grace received $710 as payments for dependent children; and that in 1959, she received county relief in the amount of $563.57. In 1959 she also received some clothing for her children from

the Good Fellows. There is evidence by this witness as to Grace contacting the public welfare director of Buffalo County with reference to obtaining assistance for herself and her children, and also evidence of another caseworker in such department relating to the same subject.

There is evidence of school teachers relating to the attendance and tardiness of the Best children, their progress, their manner in school, and the way in which they were dressed. It appears that at times the children's hair was not combed, they were dirty at times, and they wore soiled clothing. There is also evidence of conferences had with Grace relating to the progress of the children in school, and it appears that Grace showed a willingness to cooperate with the teachers as best she could.

A caseworker testified that she told Grace she had heard that Grace was at the Vets' Club drinking alcoholic beverages and that she shouldn't do this sort of thing. Grace was agreeable, and said she thought she should stay home and take care of the children and not go out, and that was what she would do. This witness further testified that on the morning of January 4, 1961, she and others were at the home of Grace. The two older children had gone to school. The younger children were crying and said that their mother had gone the night before and had not returned, and they wanted their mother. At that time arrangements were made for the children to go to the home of Mrs. Louise Steele, the next-door neighbor. At the time this witness was in the Best home on January 4, 1961, there were dirt, filth, and clothing strewn throughout the house. On the floor in the kitchen there were dishes containing the remains of the breakfast prepared for the children by Teressa. This evidence was corroborated by other witnesses. This witness further testified that on January 4, 1961, she made plans with Louise Steele for the three younger children to go to her house, and the two other

children were also to go to her house after they returned from school; that an effort was made to locate some clothes for the children to wear; and that she returned to the welfare office and called Mrs. Roy Sheen and Mrs. Wesley Strever and made arrangements for them to take care of the children and furnish them board and care. The three younger children were to go with Mrs. Sheen and the other two with Mrs. Strever. This witness further testified that Linda said that her mother had left home after 8 p.m., January 3, 1961; and that she called Mrs. John Laue, Jr., a sister of Grace, and told her what had been done, that Grace was not at home, and asked Mrs. Laue to help. On January 5, 1961, this witness contacted the sheriff and he took steps to locate Grace. On the same day Lavern called this witness at noon and inquired about the children. He was informed that they were in good hands. The sheriff called and said that Grace had been located on January 5, 1961.

The sheriff of Buffalo County testified that an extensive search was put on to find Grace.

Grace Best testified that she was employed at Fox Produce Company from the first part of 1959 until June of that year. At that time she was living with her husband. She and her husband were separated in the summer of 1959 for a period of 6 months, and went back together just prior to the birth of Randall Best. This witness went back to work for the produce company on December 23, 1959, and worked until December 29, 1960. When she was separated from her husband she had an arrangement with him to pay $20 a week for her support and for the support of the children, which was paid each week until he received a back injury about 2 months before they went back together. She was unable to pay all of the expenses, and as a consequence she went to the Buffalo County welfare office on August 18, 1960. In July 1960, she and her husband separated again. With reference to getting assistance

from the welfare office, she testified that she contacted the deputy county attorney and told him she would like to have her husband notified that he would have to pay support for the children. A letter was sent to her husband giving him 30 days in which to start payments for support of the children. A complaint was filed for nonsupport, and her husband agreed to pay $30 a week, which she received for a period of 5 weeks. This witness testified that on January 3, 1961, she took a taxicab from her home to town; that she was to go to the hospital to relieve her sister, Mrs. John Laue, Jr., who was with her daughter who had been operated upon that morning; that she did not go to the hospital but stopped to make a call to the hospital and was informed that her services would not be necessary; and that she then walked to the home of Ann Bacon. She denied that on that evening she took a taxicab from the Vets' Club. After she arrived at Ann Bacon's home, she was not feeling well. She had had the "flu" for a couple of days prior to that time. She remained at Ann Bacon's home until January 5, 1961, at 5:30 p.m., and had been there all the time except to go out and use the telephone. On January 4, 1961, she called her sister, Arlene Schultz, to ask her to go to the home of this witness, and Arlene Schultz agreed to go there and take care of the children. This witness further testified that the first person she saw on January 5, 1961, was her husband. This was in the evening when he came to Ann Bacon's home and told this witness that the sheriff had been looking for her and he was to notify the sheriff if he contacted her. She and her husband left for home at 8:30 p.m. Her husband called and notified the sheriff that he had found her. This witness testified to the amount she received when she worked for the Fox Produce Company, and what she used it for. She further testified that in the evenings, after 5 o'clock, when she would arrive home from work she would straighten up the house, and on Sunday she would do her regular house cleaning, wash-

ing, and ironing. She further testified that after January 5, 1961, she saw the children on two occasions, once when they were in school, and at the county court hearing on January 31, 1961.

Ann Bacon testified that she was acquainted with Lavern and Grace and had known them for 7 or 8 years; that she was a babysitter for Grace in 1959, during part of the winter; and that the times when she was in Grace's home it was clean and presentable, and the children were clean. She further testified that on January 3, 1961, Grace came to the home of this witness. She looked worn out and weak. She laid down, and stayed all night. The next morning when this witness went to work, Grace was no better. Grace was there until January 5, 1961, and left after this witness returned from work, and she did not see Grace again.

There is evidence on the part of the following witnesses, a caseworker, Mrs. Louise Steele and Violet Laue to the effect that this witness kept her house clean and presentable; and that the children were well behaved and dressed with clean clothing. As testified to by Mrs. Louise Steele, the condition of the house was average, considering that there was a family of five children and the mother worked. Grace had babysitters who cared for the children during the time she was working.

Lavern Best testified that on January 4, 1961, he was living apart from his wife, and that he went to where Grace was living. Mrs. Steele told him that the children had been taken away. He then went to see Violet Laue, his wife's sister, and he called Mrs. Simmerman, a caseworker, to find out where the children were. She could not tell him, but said that they were well taken care of. He found his wife at Ann Bacon's home, and when he did, she was lying down; she was quite pale, and looked ill. He further testified as to the various jobs he held, what he made, and where he lived, with relatives, while separated from his wife.

Grace Best was recalled and testified that she and

Lavern had been living together since January 20, 1961, were getting along better, and had not had any trouble since that date; that her husband was working steady at that time; that they were able to keep up with their obligations; that she was in such physical condition that she could return to work but did not desire to do so; that she wanted her children returned to her home; that she had never joined a church but had attended one; and that her children had gone to Sunday school.

The problem in this case was whether or not Lavern and Grace, the parents of the children, were fit to perform the duties of the father and mother of their children, or whether such parents had, by wrongful acts and neglect, forfeited their right to the care and custody of their children or any of them.

It is fully established in this state that courts may not properly deprive a parent or parents of their minor child or children unless it is shown that such parent or parents are unfit to perform the duties of the relationship of parent and child or have forfeited the right to the custody of such child or children. The custody of a child or children is to be determined by the best interests of the child or children with due regard to the superior rights of the parent. See Ripley v. Godden, 158 Neb. 246, 63 N. W. 2d 151. See, also, Lakey v. Gudgel, 158 Neb. 116, 62 N. W. 2d 525.

In Boucher v. Dittmer, 151 Neb. 580, 38 N. W. 2d 401, the court said: "The courts may not properly deprive the parents of the custody of their children unless it be shown that such parents are unfit to perform the duties imposed by the relation or that they have forfeited that right."

In Gorsuch v. Gorsuch, 143 Neb. 572, 10 N. W. 2d 466, on rehearing, 143 Neb. 578, 11 N. W. 2d 456, the court said: "But this court has never deprived a parent of the custody of a child merely because, on financial or other grounds, a stranger might better provide. See Voboril v. Voboril, 115 Neb. 615, 214 N. W. 254."

In the instant case the trial court made no findings of unfitness on the part of the parents of these children. The evidence discloses only one instance of neglect on the part of the mother, Grace Best, for a period not to exceed 3 days, at which time this mother was ill, needed help, went to the home of her friend, Ann Bacon, and believed that one of her sisters would go to the home and take care of the children. This evidence, as heretofore mentioned, is contradicted. In consideration of the evidence, the trial court evidently believed that the parents of these children were fit and proper persons to have their care and custody, because it gave such care and custody of the three oldest children to the parents. We believe, from a review of the evidence, that the parents are fit and proper persons to have the care and custody of their five minor children. They are living together at this time. The evidence discloses that they are able at this time to fulfill their obligations to their children, and we see no reason why the two minor children not now in the custody of the parents should not be returned to the care and custody of their parents.

Section 43-207, R. R. S. 1943, authorizes the district judge to appoint a probation officer.

In the instant case, as heretofore set out, the trial court appointed a competent and capable person to inspect and visit the home of the parents of these children at any time, day or night, to ascertain the conditions in the home and what care the children are receiving. As heretofore mentioned, the trial court may continue the hearing from time to time, as provided for in section 43-210, R. R. S. 1943, and may make such orders as may be necessary for the best interests of the children here involved.

We conclude that the judgment of the trial court should be modified in the respects as heretofore set forth. We affirm that part of the judgment of the trial court leaving the three older children here involved with the parents, and reverse that part of the judgment

of the trial court wherein the trial court placed the custody of the two younger children in the care of the Board of Control, to be placed out for adoption. We remand the cause with directions to render judgment in conformity with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.