IN RE INTERESTS OF DAVID WAYNE WORRELL ET AL.,
MINOR CHILDREN UNDER THE AGE OF 18. STATE OF
NEBRASKA, APPELLEE, V. MARY CHRISTINA WORRELL,
APPELLEE, DAVID WAYNE WORRELL ET AL., BY DONALD
E. ROWLANDS, II, GUARDIAN AD LITEM, APPELLANTS.

253 N. W. 2d 843

Filed May 18, 1977. No. 40884.

Donald E. Rowlands, II, of Baskins & Rowlands, for appellant.

John P. Murphy, for appellee State.

Keith N. Bystrom and Scott P. Helvie, for appellee Worrell.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and WHITE, JJ.

MCCOWN, J.

The appellee, Mary C. Worrell, commenced this proceeding in the county court of Lincoln County, Nebraska, to recover the care and custody of her two sons from the Lincoln County welfare office and Lincoln County probation office. Custody of the two children had been placed temporarily in those

agencies by an order of the county court under a voluntary agreement and stipulation between the mother and welfare officials. A motion to regain custody of her children made a few months later was overruled and visitation rights of the mother were limited. The mother appealed. The District Court for Lincoln County reversed the judgment of the county court, but directed that custody remain unchanged pending appeal to this court. The guardian ad litem has appealed for the children.

On March 26, 1975, Mary C. Worrell, the unmarried natural mother of David Wayne Worrell, age 3½ years, and Richard Eugene Worrell, age approximately 5 months, voluntarily sought temporary help from the Lincoln County welfare office to provide for the physical needs of her children because she was then financially unable to provide adequately for them. After consultation with the county attorney's office, it was arranged for the mother to temporarily relinquish custody of her children to the welfare office. The mother agreed and stipulated to the statement that she was presently unable on her income to provide for the physical needs of the children, and that the problem was compounded by her drinking habits. In accordance with the stipulation, the county court, sitting as a juvenile court, entered an order placing the children temporarily in the joint care and custody of the Lincoln County welfare office and the probation office of the court for temporary placement in a foster home. The understanding was that the arrangement was to be for a period of 6 months to a year. The children were placed with a couple in a foster home on April 1, 1975. The natural mother had some difficulty in arranging to visit the boys because the foster parents insisted that she could not visit unless the husband was present. She was required to arrange her visits through the welfare office, and was not always successful in getting to see her children. The foster

parents were interested in adopting the children, and at one point employed an attorney to assist in the adoption. In November 1975, it was necessary for the mother to obtain a court order to allow her to visit the children on the younger boy's first birthday.

In late summer of 1975, the deputy county attorney filed a motion for termination of the parental rights of the mother alleging that she had neglected the children, and that she was an unfit mother. A guardian ad litem was appointed for the children and the public defender represented the mother. On October 21, 1975, 2 days before the date set for hearing on the motion for termination, the deputy county attorney, with the concurrence of the public defender and the guardian ad litem, moved the court to continue the matter indefinitely for the specific reason that there was insufficient evidence to warrant the termination of parental rights. The county court continued the matter indefinitely and left the custody arrangements unchanged.

Meanwhile, the mother had been working to get her financial affairs in order. At one time she had two full-time jobs and by early December 1975, she had paid her loan indebtedness, and had rented and moved into a two-bedroom trailer house so that she would have room for the children. On December 2, 1975, the mother moved to terminate the order of temporary custody of March 26, 1975, and to regain the custody of her children.

Hearing was held in early December 1975. At that time the mother was 25 years old. She had a tenth-grade education, and had been continuously and regularly employed. The evidence for the mother was that she had always been a good mother, and that her children had always been clean and healthy, and had proper food, clothing, and medical attention. The foster mother conceded that the children were normal and healthy children when she took over their care. The evidence also was that the mother kept a clean

house, did not have a drinking problem, and that her financial resources were sufficient to make an acceptable home for her children. The mother loved her children and the affection was returned.

The evidence for the State showed that the mother was not married, and the children were born out of wedlock. A previous illegitimate child, born when the mother was 18, had been given up for adoption. The mother had attempted suicide on three occasions. The mother's evidence was that these attempts were when she was much younger, and were not serious attempts at suicide. From January to May 1975, she had lived with a man. In August of 1975, she spent 5 days in jail for "unlawfully conversing with a prisoner." This was her only arrest or conviction. The State's evidence also showed that she visited lounges and bars on occasion. There was also evidence that the older boy sometimes used "rough" language, although that term was not defined. The State also introduced evidence that the mother had lived in a number of different locations since 1971, had changed jobs frequently, and that her reputation was not good.

At the conclusion of the hearing the county judge stated: "I think I can find at this time that there's no question in the court's mind that the children could be returned to the natural mother and that there's no real fear for the safety of these children and it looks like she did a fair job of keeping them healthy but the primary concern by the court is the emotional stability of the family unit and the ability for Chris Worrell to function as a proper mother from an emotional standpoint." The county court then overruled the motion to terminate the temporary custody and limited the mother's visitation rights to 5 hours on Christmas day; 5 hours on each of the children's birthdays; and 5 hours on the second Monday of each month. The mother then appealed to the District Court.

The District Court, without taking additional evidence, reversed the order of the county court, ordered the children returned to the custody of the mother, but directed that custody remain unchanged pending appeal to this court. The guardian ad litem filed a motion for a new trial, which was overruled, and this appeal by the guardian ad litem followed.

The guardian ad litem contends that the standard for review by the District Court in a juvenile case requires the District Court to affirm the decision made by the county court, sitting as a juvenile court, unless there has been an abuse of discretion. It is also contended that the county court, as the original trial court, saw and heard the witnesses and its decision should therefore be affirmed.

Section 43-202.03, R. S. Supp., 1976, provides that in a juvenile court proceeding instituted before a county court sitting as a juvenile court, "appeal may be had to the district court as in civil cases, * * *. The county court shall continue to exercise supervision over the child until a hearing is had in the district court and the district court enters an order making other disposition. If the district court adjudges the child to be a child defined in section 43-202, the district court shall affirm the disposition made by the county court, unless it is shown by clear and convincing evidence that the disposition of the county court is not in the best interest of such child. Upon determination of the appeal, the district court shall remand the case to the county court for further proceedings consistent with the determination of the district court."

Section 24-541, R. R. S. 1943, dealing with civil appeals such as this, provides that all such appeals shall be de novo on the record. It also provides that the District Court may, in its discretion, receive additional evidence if the court determines it reasonably necessary. This court has determined the standard for review in civil cases appealed to the

District Court under that section. On appeal from the county or municipal court to the District Court in civil matters under section 24-541, R. R. S. 1943, it is the obligation of the District Court to reach an independent conclusion without reference to the decision of the county court. Phillippe v. Barbera, 195 Neb. 727, 240 N. W. 2d 50; Von Seggern v. Kassmeier Implement, 195 Neb. 791, 240 N. W. 2d 842. The specific provisions of section 43-202.03, R. S. Supp., 1976, dealing with the standard for affirmance of dispositions made by the county court, are not applicable here by their own terms.

In appeals in equity from the District Court to the Supreme Court, this court reviews the issues by trial de novo on the record. See § 25-1925, R. R. S. 1943. An appeal from a finding and judgment of the District Court involving dependent or neglected children under Chapter 43, article 2, R. R. S. 1943, is disposed of in this court by trial de novo on the record. State v. Kinkner, 191 Neb. 367, 216 N. W. 2d 165.

Regardless of the standard of review, however, the rule has been long established in this state that courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right. Jorgensen v. Jorgensen, 194 Neb. 271, 231 N. W. 2d 360; Miller v. Miller, 196 Neb. 146, 241 N. W. 2d 666. Courts cannot deprive a parent of the custody of a child merely because the parent has limited resources or financial problems, or is not socially acceptable, nor because the parent's life style is different or unusual. Neither can a court deprive a parent of the custody of a child merely because the court reasonably believes that some other person could better provide for the child.

This case is unusual in the fact that the mother voluntarily arranged for the relinquishment of custody on a temporary basis because of her temporary

financial inability to properly provide for the physical needs of her children. The Juvenile Court Act itself requires, among other things, that the act shall be construed to provide for the intervention of the juvenile court in the interest of any child who is within the provisions of the act, with due regard to parental rights and capacities and the availability of nonjudicial resources, and to achieve those purposes in the child's own home whenever possible, separating the child from his parents only when necessary for his welfare or in the interest of public safety and, when temporary separation is necessary, to consider the developmental needs of the individual child in all placements and to assure every reasonable effort possible to reunite the child with his family. See § 43-201.01(2)(4), R. S. Supp., 1976.

The original relinquishment of the children was wholly voluntary, and the order granting temporary custody was by agreement and stipulation. There was no evidence and no finding of unfitness of the mother. On a motion for termination of that order, however, the State was not required to affirmatively prove that the mother was then unfit to perform the duties of a parent or had forfeited her right to custody. Instead, the county court placed the burden on the mother to show that she was fit to have custody of the children. The voluntary relinquishment and order for temporary custody, under the circumstances here, did not remove or change the State's burden to prove the unfitness of the parent in any subsequent proceeding to terminate the temporary custody. The evidence here failed to affirmatively establish that the mother was unfit to perform the duties imposed by the parental relationship or that she had forfeited that right.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.