IN RE INTEREST OF LESLIE SUE RICE, A MINOR CHILD UNDER THE AGE OF 18 YEARS. STATE OF NEBRASKA, APPELLANT, V. LESLIE SUE RICE ET AL., APPELLEES.

285 N. W. 2d 223

Filed November 13, 1979. No. 42402.

Milton R. Larson, Lincoln County Attorney, and Marianne C. Vainiunas, for appellant.

Thomas J. Guilfoyle of Guilfoyle, Fogarty & Lund, Craig F. Swoboda of Swoboda & Katz, and Scott P. Helvie, Lincoln County Public Defender, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

This is an appeal by the State of Nebraska from a judgment of the District Court reversing a finding by the county court of Lincoln County, sitting as a juvenile court, that Leslie Sue Rice, a minor, was a "child * * * whose parent * * * neglects or refuses to provide proper or necessary * * * education, or other care necessary for the health, morals, or well-being of such child," as provided for in section 43-202 (2) (c), R. R. S. 1943.

The dispositional hearing was held on December 1 and 2, 1977. At that time the minor was just past 13 years of age. She lived in Wallace, Nebraska, with her mother and father, and had completed the sixth grade in the Wallace public school system the preceding year. However, both she and her parents

were what they denominated "born-again Christians," and as such, among other things, believed in a more or less literal and fundamental interpretation of the Bible; supported the view of creation and rejected totally the theory of evolution; and believed that the responsibility of all education of a child rested solely with the parents rather than the state. For some time they had been dissatisfied with the curriculum and textbooks of the public school system, primarily because they were not religiously oriented, and they had been searching for a satisfactory alternative. They became aware of and made inquiry to the Christian Liberty Academy of Prospect Heights, Illinois, which operated a conventional religious primary and secondary school accredited by the state of Illinois, as well as approximately 300 satellite schools consisting of 1,000 students scattered throughout the 50 states. As a result, the Rice Christian Academy was created, consisting of Lesley Rice, the minor's father, as headmaster; Dixie Rice, the mother, as teacher; and, of course, Leslie Sue as the only student. A classroom was set up in the home, and textbooks, lesson plans, reading lists, problems, and tests were furnished by the parent organization in Prospect Heights, which offered needed consultation by telephone when required, and read and graded the various work papers and tests. There appeared to be no question but what the minor attended seventh grade classes at the Rice Christian Academy on a daily basis and during regular and conventional school hours.

The mother had one semester of college, but possessed no teaching experience. Mr. Rice had engaged successfully in several of the building trades, was currently well employed, and, in addition, he and his wife owned and operated a hotel, a laundromat, and several rental properties. The academy was not approved by the State of Nebraska, nor were the textbooks accepted for the teaching of

American history, as required by state law. Leslie Sue attended no school during the 1977-78 school year other than Rice Christian Academy.

Other than the lack of official approval, the only criticism of the quality of education offered by the Rice Christian Academy was by the Wallace superintendent of schools. He agreed that he had not spent enough time to make a worthwhile overall evaluation. However, he questioned the history book as being more of a summary than an in-depth investigation of American history, and noted the apparent absence of courses of study in physical education and health and safety. Other deficiencies pointed out by another witness related to the absence of presentation of alternative philosophies and beliefs and of daily interactions with peer groups.

On the other hand, an assistant professor of psychology from the University of Nebraska at Omaha, after extensive testing of Leslie Sue and a comparison with her tests from prior years while attending public schools, noted a general deterioration of her relative achievement standing up through the testing in the fall of 1977, but considerable progress from then until July of 1978, after her 1 year at the Rice Christian Academy. Based upon Leslie Sue's progress, as revealed by the various tests, the witness ventured the opinion that her education was quite satisfactory.

Another witness who qualified as an expert in the field of education and curriculum review testified that from his examination of the subjects taught at Rice Christian Academy he found them to be comprehensive and adequate.

It is conceded by all parties concerned that the Rice Christian Academy is not an approved school by state standards. Rule 14, Revised, of the Nebraska State Department of Education, is the regulation and procedure for approving the continued operation of all schools and the opening of new schools. It was

enacted pursuant to authority granted by the Legislature in section 79-328, R. R. S. 1943. Rule 14-(O), General Provisions, thereof, provides in part: "Only school systems approved for continued legal operation by the State Board of Education are considered to be providing a program of instruction which is in compliance with the compulsory attendance laws." Rule 14 was properly introduced into evidence by the State at the hearing in the District Court.

An appeal from the order of a county court sitting as a juvenile court to the District Court and to this court requires that we review the adjudication de novo on the record and reach an independent conclusion on disputed issues of fact. §§ 43-202.03, 24-541, and 25-1925, R. R. S. 1943; State v. Worrell, 198 Neb. 507, 253 N. W. 2d 843 (1977). However, this court will give great weight to the findings of fact made by the trial court because it heard and observed the parties and the witnesses. State v. Bailey, 198 Neb. 604, 254 N. W. 2d 404 (1977). Whether a parent has neglected or refused to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of a minor child under the provisions of section 43-202 (2) (c), R. R. S. 1943, is a question of fact, and each case must be determined on its own facts. State v. Randall, 187 Neb. 64, 187 N. W. 2d 586 (1971).

The State contends that the compulsory attendance laws as found in Chapter 79 of the Nebraska statutes, and Rule 14, *supra*, must be construed in pari materia with the juvenile court act, Chapter 43, article 2, including section 43-202 (2) (c), R. R. S. 1943, and that therefore the "proper or necessary * * * education * * * necessary for the health, morals, or well-being of such child" which must be provided by the parent is attendance at a school approved for compulsory attendance. In furtherance of its position, it points to section 79-211, R. R. S. 1943, which, after having provided for written warn-

ing to the person in charge of a child not attending school under section 79-201, R. R. S. 1943, requires that a complaint be filed in juvenile court, and section 79-216, R. R. S. 1943, mandates that anyone violating this act shall be guilty of a misdemeanor and be fined from $5 to $100, or be imprisoned in the county jail for not more than 90 days, or both.

Sections 79-201 and 79-211, R. R. S. 1943, were originally enacted in 1901, and have remained in more or less their present form. However, section 43-202 (2) (c), R. R. S. 1943, makes no reference to the proceeding mentioned in section 79-211, nor does section 43-202 (4) (b), which grants the juvenile court exclusive jurisdiction of a child "who is habitually truant from school or home; * * *." The present-day language of section 43-202 (4) (b), R. R. S. 1943, was enacted in 1913, and then for the first time defined habitual truancy as an act of delinquency aimed at the child itself. Therefore, at Chapter 79, our laws proscribed the conduct of parents in not sending children to school, and section 43-202 (4) (b) accomplished the same purpose as to the child. This would seem to cover completely the subject of compulsory school attendance, but these laws were not invoked by the State in this case.

In 1955, the Legislature, in separating for definitional purposes a dependent and a neglected child, included the present-day language of section 43-202 (2) (c), R. R. S. 1943. This for the first time included the provision relating to the neglect or refusal of a parent to provide proper education "necessary for the health, morals, or well-being" of a child. It is obvious from an examination of that language that the legislative intent was to categorize children who were destitute or without home or support as neglected; those who were abandoned for practical purposes or were not receiving the proper kind of parental care as neglected; and those who were vicious or with criminal bent as delinquent. In 1973,

the Legislature deleted the identifying names as "dependent," "neglected," or "delinquent," but the descriptions remain as subsection (1), subsection (2), and subsections (3) and (4), respectively, of section 43-202, R. R. S. 1943.

It is our opinion that Chapter 79, R. R. S. 1943, relating to compulsory school attendance, and section 43-202 (2) (c), R. R. S. 1943, regarding the neglect of children, generally do not pertain to the same subject matter and should not be construed in pari materia. From v. Sutton, 156 Neb. 411, 56 N. W. 2d 441 (1953). Additionally, the Legislature when enacting legislation is presumed to have knowledge of all previous legislation on the subject so that if it intended to equate nonattendance under Chapter 79 with "neglect" under section 43-202 (2) (c), R. R. S. 1943, it would have said so. Bass v. County of Saline, 171 Neb. 538, 106 N. W. 2d 860 (1960).

We feel that section 43-202 (2), including subsection (c), R. R. S. 1943, relates to actions by parents amounting to neglect, abandonment, or denial of proper care such as will endanger the health, morals, or well-being of a child. From our view of the evidence, such a situation does not exist here, and is not proved simply by establishing that the parents *may* be violating the compulsory school attendance law, which latter question we do not here decide.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.