DENISE ROCHELLE REYNOLDS, APPELLEE, V. JOHN LEE GREEN, APPELLANT.
439 N.W.2d 486

Filed May 5, 1989.   No. 88-508.

Richard M. Fellman and John P. Steichen, of Nye, Fellman, Moylan & Brown, for appellant.

Rita L. Melgares for appellee.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and RIST, D.J.

PER CURIAM.

The petitioner, Denise Rochelle Reynolds, and the respondent, John Lee Green, are the unmarried parents of a female child born September 7, 1986. The record shows that the parties met in November of 1984 and soon thereafter began living together in Omaha, Nebraska. Reynolds' 4-year-old son and two of Green's children, a 19-year-old and an 18-year-old, were living with the parties.

Sometime after their child was born, the parties began having difficulties which led to Reynolds' leaving the family home at Eastertime in 1987, leaving both of her minor children in the care of Green. Prior to leaving at Easter, Reynolds had left the home on two other occasions. However, after leaving at Easter, Reynolds told Green that she was through and that "it's over." After that time, the parties had no contact.

On June 12, 1987, Reynolds filed a petition in the district court for a writ of habeas corpus to obtain custody of the child, who was then still living with Green. Reynolds alleged that the respondent Green had the minor child, then 9 months of age, in his possession and was unlawfully and forcibly detaining the child in his home under threat of violence and that the respondent had a pistol in his possession and had previously committed acts of violence against Reynolds. Reynolds prayed that a writ be issued directing the child be brought before the court in order to determine her care, custody, and possession. A writ was issued, with the return day set for June 16, 1987.

At the hearing on return day, the trial court placed custody of the child in the court and awarded possession to Reynolds. Trial was on March 24, March 28, and April 19, 1988. On May 11, 1988, the trial court found that both of the parties were fit and

proper to have custody of the child, but that it was in the best interests of the child that her care, custody, and control be placed with the petitioner subject to specific rights of visitation awarded to the respondent. The respondent has appealed.

The petitioner is 25 years of age. The respondent is 40 years of age. According to Reynolds, the parties argued frequently, and Green, because of his bad temper, struck Reynolds with his fists. Reynolds stated that on more than one occasion Green struck her four or five times with a large leather belt used for weight lifting. In addition, Reynolds testified that Green suffered from chronic back pain and used marijuana on a daily basis for pain relief. Green admitted that he began using marijuana in 1980, but denied using it at the present time.

Anna Foster, an outpatient therapist at the North Clinic family counseling center in Omaha, testified that she met Reynolds in November of 1986 when Reynolds sought counseling at the center because of trouble with her relationship with Green. Foster counseled with Reynolds for about 1 year on a weekly basis and also involved Reynolds in a support group for women who had been molested as children. Reynolds had been sexually abused at the age of 8 by her stepfather. Foster did provide counseling to Reynolds in Reynolds' home about five times, and thus had the opportunity to observe Reynolds in the company of her children. Foster concluded that Reynolds provided adequate care and supervision for her children and that their best interests would be served by placing the child with her mother. Reynolds also counseled with Green on one occasion for about 1 hour. Although she did not find him unfit as a father, she did recommend placement of the child with her mother, as the child had been living with the mother for the last 9 months and to her knowledge there were no significant problems which would indicate the need for a change in the child's placement.

At the time of the hearing, Reynolds was employed in the laundry department of Bergan Mercy Hospital on a full-time basis and was earning $5.07 per hour. Through her employment, Reynolds received health insurance benefits which covered the child involved in this action. Reynolds stated that if she were to gain custody of the child, Reynolds' sister,

who currently babysits for the child, would continue to do so. Prior to the hearing, in July of 1987, Reynolds moved with her two children to a two-bedroom home with a kitchen, a washer and a dryer, a living room, and a bathroom. The male child has his own bedroom, and the female child shares a room with her mother. Reynolds stated that her son and the child involved in this action enjoy a close relationship and that the children have close contacts with her extended family. Finally, Reynolds testified that she and her children routinely attend church services in Omaha.

Green is disabled due to a chronic back condition and receives Social Security disability payments. Green testified as to what he considered to be problems revolving around Reynolds' ability to provide proper care for the minor child. Green related several instances in which he found the child, after having been with Reynolds, to be improperly dressed for the time of year and dirty and odorous, and noted that her body contained rashes, open sores, scars, and scabs. Green had called both the Omaha Police Division and Child Protective Services about the injuries he noted on the child, and had been told that Child Protective Services was going to check into the situation. Green also stated that he frequently took the child to the hospital emergency room for treatment of various ailments and that when he tried to tell Reynolds what had occurred and what treatment was necessary, she became angry and it was impossible to communicate with her. At one point, Green stated that Reynolds became so enraged because he had taken the child to the emergency room that she threw the prescription into the street. Green also told of an episode when he was taking the child to the emergency room and Reynolds followed his car. While he was stopped at a stop sign, Reynolds purposely rammed her car into the rear of Green's car. Green then drove to the police station and reported the incident. However, the testimony concerning these incidents is in conflict.

Green testified that in addition to providing the child with monetary support in the amount of $95 per month through Social Security, he has provided food and clothing for the child.

Betty Nelum, a drug and alcohol counselor for Operation Bridge, testified that she first met Green in July of 1987 when he

entered the clinic for therapy relating to anxiety and emotional problems he was experiencing because of his separation from the child. Green was seen weekly at the clinic, and based on her observations, Nelum testified that Green could be an appropriate father for the minor child. It was her opinion that Green was an honest person, and she believed that he was not currently involved in marijuana use. In February of 1988, Nelum performed a home visit at Green's residence and found the home to be neat and clean; the minor child had adequate room space and her own bed; educational toys were present; and the family members all seemed to get along well.

Green also presented the testimony of his next door neighbors, Meredith and Leonard Harrold, who characterized Green as the "epitome of a good parent."

The appellant's sole assignment of error is that the trial court abused its discretion in awarding custody of the minor child to the child's mother, the appellee herein. In *Hibbard v. Hibbard,* 230 Neb. 364, 365, 431 N.W.2d 637, 638 (1988), we stated that "[c]hild custody determinations are matters initially entrusted to the discretion of the trial court, and, on appeal, although the Supreme Court reviews these cases de novo on the record, the trial court's determination will normally be affirmed in the absence of an abuse of discretion." See, *Griffith v. Griffith*, 230 Neb. 314, 431 N.W.2d 609 (1988); *Svoboda v. Svoboda*, 230 Neb 283, 430 N.W.2d 695 (1988). More specifically, "A decision in a habeas corpus case involving the custody of a child is reviewed by this court de novo on the record. Where the evidence is in irreconcilable conflict, we consider the findings of the trial court." *D.S. v. United Catholic Soc. Servs.*, 227 Neb. 654, 656, 419 N.W.2d 531, 533 (1988); *Gaughan v. Gilliam*, 224 Neb. 836, 401 N.W.2d 687 (1987), citing *Auman v. Toomey*, 220 Neb. 70, 368 N.W.2d 459 (1985).

In addition, this court in *Gaughan, supra* at 840, 401 N.W.2d at 690, stated that "[t]he remaining question present in every habeas corpus case is the welfare and best interests of the child." See, also, *Vance v. Vance*, 231 Neb. 334, 436 N.W.2d 177 (1989).

Although the trial court awarded custody of the minor child to the mother, the trial court stated that "you're both good people. You're both deserving of the child, from the evidence."

The record shows both parties wanted custody of the child and that neither party was considered unfit by any of the witnesses. However, the trial court concluded that it was in the best interests of the child that the mother have custody of the child.

The mother's counselor, Foster, who testified on her behalf, concluded that through her observations of the mother and her children, there was nothing that would indicate that the child would suffer harm from being placed in the mother's custody and that the best interests of the child would be served by such placement. Although the evidence is in conflict, we find the testimony concerning the physically abusive conduct of the father toward the mother a matter of concern. This is not to say that the mother herself is without problems. The mother is employed, has a secure and stable home, is providing health insurance coverage for the child, and has fostered a warm relationship between her son and the minor child involved in this case. Of significance is the fact that the child has resided with her mother since June 16, 1987, a period of almost 2 years. Without strong evidence indicating the need for a change in custody, we conclude that the judgment of the trial court placing custody with the mother should not be disturbed. The judgment is affirmed.

·    AFFIRMED.