In re Interest of Laticia S., a child
under 18 years of age.
State of Nebraska, appellee and cross-appellee,
v. Stacy S., appellant, and Michael S.,
appellee and cross-appellant.

___ N.W.2d ___

Filed April 8, 2014.    No. A-13-461.

1. **Rules of the Supreme Court: Appeal and Error.** Headings in the argument section of a brief do not satisfy the requirements of Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2012). Under that rule, a party is required to set forth the assignments of error in a separate section of the brief, with an appropriate heading, following the statement of the case and preceding the propositions of law, and to include in the assignments of error section a separate and concise statement of each error the party contends was made by the trial court.

2. **____: ____.** Where a brief of a party fails to comply with the mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2012), an appellate court may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error.

3. **Juvenile Courts: Judgments: Appeal and Error.** Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

4. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

5. **Juvenile Courts: Schools and School Districts: Statutes.** Compulsory education statutes and juvenile code statutes regarding the neglect of children generally do not pertain to the same subject matter and should not be construed in pari materia.

6. **Juvenile Courts: Jurisdiction.** Under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) of the juvenile code, the juvenile court in each county has jurisdiction of any juvenile whose parent neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile.

7. **Schools and School Districts: Parent and Child.** Neb. Rev. Stat. § 79-201 (Cum. Supp. 2010) of the compulsory education laws generally provides that every person residing in a Nebraska school district who has legal or actual charge or control of any child who is of mandatory attendance age or is enrolled in a public school shall cause such child to regularly attend a public, private, denominational, or parochial day school which meets the legal operation requirements each day that such school is open and in session, except when excused by school authorities.

8. **Schools and School Districts: Criminal Law.** Neb. Rev. Stat. § 79-210 (Reissue 2008) makes a violation of Neb. Rev. Stat. § 79-201 (Cum. Supp. 2010) a Class III misdemeanor.

9. **Juvenile Courts: Jurisdiction: Schools and School Districts: Parent and Child.** Essentially, Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) establishes the juvenile court's jurisdiction over a minor child, while Neb. Rev. Stat. §§ 79-201 (Cum. Supp. 2010) and 79-210 (Reissue 2008) make the minor child's parents or legal guardians culpable for the child's truancy. The county attorney is free to decide whether to proceed utilizing the juvenile code or the compulsory education laws.

10. **Juvenile Courts: Jurisdiction.** The purpose of the adjudication phase is to protect the interests of the child.

11. **Juvenile Courts: Jurisdiction: Proof.** At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor child under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008), the State must prove the allegations of the petition by a preponderance of the evidence, and the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247.

12. **Schools and School Districts: Criminal Law: Juvenile Courts: Jurisdiction.** The school's duty to provide services in an attempt to address excessive absenteeism comes from Neb. Rev. Stat. § 79-209 (Supp. 2011), relating to compulsory attendance and the possibility of a parent's being subjected to a criminal sanction. The school has no duty to provide reasonable efforts before an adjudication under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) of the juvenile code.

Appeal from the Separate Juvenile Court of Douglas County: Elizabeth Crnkovich, Judge. Affirmed.

Jane M. McNeil, of McNeil Law Office, for appellant.

Donald W. Kleine, Douglas County Attorney, Sarah Graham, and Mary Stiles, Senior Certified Law Student, for appellee State of Nebraska.

Rita L. Melgares for appellee Michael S.

Irwin, Moore, and Bishop, Judges.

Bishop, Judge.

Stacy S. appeals, and Michael S. cross-appeals, from the decision of the separate juvenile court of Douglas County which adjudicated their minor child, Laticia S., pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008), after finding that Stacy and Michael neglected Laticia's education. We affirm.

BACKGROUND

Stacy and Michael are the biological parents of Laticia, born in August 2005. Laticia was 6 years old during the 2011-12 school year.

On September 25, 2012, the State filed a petition with the juvenile court, alleging that Laticia was a child within the meaning of § 43-247(3)(a) by reason of the faults or habits of her parents. The State alleged that (1) Laticia did not attend school 22.2 school days out of 117 possible school days while enrolled at Edward Babe Gomez Heritage Elementary School (Gomez Elementary) between August 2011 and February 2012, (2) the parents failed to actively assist Laticia in attending school and failed to work with school authorities, and (3) due to the above allegations, Laticia was at risk for harm.

An adjudication hearing was held on April 17, 2013. The only witness at the adjudication hearing was Anne MacFarland, a student personnel assistant with Omaha Public Schools. MacFarland monitors students' attendance and is responsible for working with families to improve attendance. She said:

> Attendance is gathered in a variety of ways. Certainly the daily attendance is monitored by the direct staff in [the] school building. However, we also have a process in place where there's an automatic generation in five days of attendance to the school personnel and then also at 12 days to me as the student personnel assistant and then at 20 days to me in communication and collaboration with the school, and then at that point I refer it to the County Attorney.

MacFarland is the recordkeeper for attendance records. The school secretary documents information in the data management system, which MacFarland has access to and relies on in carrying out her duties.

MacFarland took over the position of student personnel assistant for Gomez Elementary in April 2011. Approximately 1 week later, Laticia's name appeared on a "20-day" list for absences. MacFarland stated that at that time, the school believed that Laticia was "too young" for a referral to the county attorney's office. MacFarland continued to monitor Laticia's absences for the 2011-12 school year.

MacFarland testified that Laticia had over 22 absences between August 2011 and February 2012, none of which were medically excused. MacFarland said that on several occasions, the school secretary was able to contact either Stacy or Michael about the absence, and then the parent would report the reason for the absence.

On January 23, 2012, MacFarland learned from the school counselor that there had been a fire at Laticia's home; MacFarland did not know when the fire actually occurred. MacFarland testified that it was Laticia's grandmother who notified the school about the fire. Laticia and her parents moved in with the grandmother after the fire. MacFarland spoke with the grandmother about transportation issues. Neither Stacy nor Michael contacted the school regarding transportation for Laticia; rather, it was the grandmother who worked with school officials. A request for transportation was made on January 24, and transportation was set to begin on February 8. The transportation was never utilized, and the absences continued.

MacFarland testified that she contacted the grandmother and was informed that transportation was no longer needed because the family was moving to the Millard Public Schools district. Again, neither Stacy nor Michael contacted the school about a move. MacFarland testified that a student must continue to attend his or her current school until the records have been requested by the new school district. Millard Public Schools never requested Laticia's records. Thus, Laticia was required to continue attending Gomez Elementary.

Laticia missed 14 days of school between January 5 and February 27, 2012, 5 days of which were between January 24 and February 8, when transportation arrangements were being made. In total, Laticia had over 22 absences between August 2011 and February 2012. Laticia was also absent for 13 full or partial days in March and April 2012. In April, Laticia transferred to another elementary school in the Omaha Public Schools district.

MacFarland testified that prior to the fire, the school counselor attempted a home visit, but no one was home. After being notified of the fire, MacFarland made several attempts

to contact Stacy and Michael, via Michael's cell phone number that had been provided to the school, but those attempts were unsuccessful. MacFarland testified that attendance letters had been "generated" from the school. And although MacFarland typically sends out a "12-day" letter, she did not do so in this case, because she had been in communication with the grandmother and accomplished the letter's purpose (to notify the family of the attendance policy and absences, schedule a conference to discuss the absences, and see how the school can assist). MacFarland eventually filed a report with the county attorney regarding Laticia's absences.

MacFarland testified that Laticia is at risk of harm due to the number of school days missed and the consistency of absences over a 2-year period.

In its order filed on April 19, 2013, the juvenile court found the allegations in the petition to be true by a preponderance of the evidence and adjudicated Laticia to be within the meaning of § 43-247(3)(a) due to the faults or habits of Stacy and Michael. The juvenile court placed Laticia in the temporary custody of the Nebraska Department of Health and Human Services for appropriate care and placement, which may include the parental home. Stacy has timely appealed, and Michael cross-appealed.

## ASSIGNMENTS OF ERROR

[1,2] Stacy's brief does not contain a separate "assignments of error" section stating the assigned errors completely apart from the arguments in her brief. The Nebraska Supreme Court recently emphasized that headings in the argument section of a brief do not satisfy the requirements of Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2012). Under that rule, a party is required to set forth the assignments of error in a separate section of the brief, with an appropriate heading, following the statement of the case and preceding the propositions of law, and to include in the assignments of error section a separate and concise statement of each error the party contends was made by the trial court. *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). Where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e),

we may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *In re Interest of Samantha L. & Jasmine L., supra*.

On cross-appeal, Michael assigns that the juvenile court erred in determining that (1) he had failed or refused to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of Laticia and (2) reasonable efforts were provided by the school to cure deficiencies leading to the alleged insufficient subsistence, education, or other care necessary for the health, morals, or well-being of Laticia.

## STANDARD OF REVIEW

[3] Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013).

[4] Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Samantha L. & Jasmine L., supra*.

## ANALYSIS

*Testimony of MacFarland.*

Stacy argues in her brief that the State failed to lay proper foundation as to MacFarland's knowledge of "missed days." Brief for appellant at 11. Because Stacy failed to comply with § 2-109(D)(1) regarding assignments of error, our review is limited to an examination of the record for plain error. See *In re Interest of Samantha L. & Jasmine L., supra*. MacFarland was the student personnel assistant assigned to Gomez Elementary, where Laticia was enrolled. MacFarland testified that she monitors students' attendance and is the recordkeeper for attendance records. She stated that the school secretary documents attendance information in the data management

system, which MacFarland has access to and relies on in carrying out her duties. MacFarland testified that she monitored Laticia's absences for the 2011-12 school year. Under our plain error review, MacFarland's testimony regarding "missed days" had sufficient foundation to be admitted.

*Juvenile Code Versus Compulsory
Education Laws.*

[5] Laticia's absences from school ostensibly fall under two different statutory provisions: one, the juvenile code statutes regarding neglect of children, and the other, statutes relating to compulsory education. Compulsory education statutes and juvenile code statutes regarding the neglect of children generally do not pertain to the same subject matter and should not be construed in pari materia. See *State v. Rice*, 204 Neb. 732, 285 N.W.2d 223 (1979). See, also, *In re Interest of Samantha C.*, 287 Neb. 644, ___ N.W.2d ___ (2014) (reaffirming that those two statutory enactments are not pari materia and need not be construed conjunctively).

[6-9] Under § 43-247(3)(a) of the juvenile code, the juvenile court in each county has jurisdiction of any juvenile whose parent neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile. The version of Neb. Rev. Stat. § 79-201 (Cum. Supp. 2010) (compulsory education laws) in effect during the 2011-12 school year generally provides that every person residing in a Nebraska school district who has legal or actual charge or control of any child who is of mandatory attendance age or is enrolled in a public school shall cause such child to regularly attend a public, private, denominational, or parochial day school which meets the legal operation requirements each day that such school is open and in session, except when excused by school authorities. Neb. Rev. Stat. § 79-210 (Reissue 2008) makes a violation of § 79-201 a Class III misdemeanor. Essentially, § 43-247(3)(a) establishes the juvenile court's jurisdiction over Laticia, while §§ 79-201 and 79-210 make her parents or legal guardians culpable for her truancy. The county attorney was free to decide whether to proceed utilizing the juvenile

code or the compulsory education laws. See Neb. Rev. Stat. § 79-209 (Supp. 2011) (version of statute in effect during 2011-12 school year). See, also, *State v. Null*, 247 Neb. 192, 526 N.W.2d 220 (1995) (when single act violates more than one statute, prosecutor is free to choose to prosecute under any applicable statute so long as selection is not deliberately based upon any unjustifiable standard such as race, religion, or other arbitrary classification). Here, the county attorney opted to proceed only under a statute which establishes the juvenile court's original jurisdiction over Laticia, rather than under a statute which holds Laticia's parents criminally responsible for her truancy. Therefore, we turn to whether the evidence was sufficient under the juvenile code.

*Sufficiency of Evidence
Under § 43-247(3)(a).*

[10,11] The purpose of the adjudication phase is to protect the interests of the child. *In re Interest of Cornelius K.*, 280 Neb. 291, 785 N.W.2d 849 (2010). At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor child under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence, and the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Cornelius K., supra*. Section 43-247(3)(a) states that the juvenile court shall have jurisdiction of "[a]ny juvenile . . . whose parent . . . neglects or refuses to provide proper or necessary subsistence, *education*, or other care necessary for the health, morals, or well-being of such juvenile." (Emphasis supplied.) This is the subsection specifically alleged by the State in its petition.

Michael argues that the juvenile court erred in finding that he had failed or refused to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of Laticia. Stacy similarly argues that the juvenile court erred in finding that she neglected Laticia's education. Again, our review of Stacy's appeal is limited to an examination of the record for plain error. See *In re Interest*

*of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013).

Laticia was on the "20-day" list for absences during the 2010-11 school year. Her attendance continued to be monitored during the 2011-12 school year. Laticia had over 22 absences between August 2011 and February 2012, none of which were medically excused. On several occasions, the school secretary contacted the home (because neither parent called to report the absence), spoke with a parent, and was then given a reason for the absence. Neither Stacy nor Michael informed the school about the house fire; it was the grandmother who notified the school. After being informed of the fire, the school arranged transportation for Laticia beginning February 8, 2012, yet transportation was never utilized and Laticia continued to miss school. Laticia was absent for 13 full or partial days in March and April 2012. Stacy and Michael had a parental, and legal, duty to make sure that Laticia attended school each day that school was open, unless excused by school authorities. See § 79-201. They failed to do so.

Stacy argues in her brief that public policy indicates that the school district should have excused the missed days after the family home was destroyed by fire. Again, because Stacy failed to comply with § 2-109(D)(1) regarding assignments of error, our review is limited to an examination of the record for plain error. See *In re Interest of Samantha L. & Jasmine L., supra*. Because neither Stacy nor Michael informed the school of the fire and because the transportation arranged by the school district after the school learned of the fire was never utilized (yet Laticia continued to miss school), we find no plain error.

MacFarland testified that she is concerned about Laticia's academic achievement and that Laticia is at risk of harm due to the number of school days missed and the consistency of absences over a 2-year period. We agree. After our de novo review, we find the State proved by a preponderance of the evidence that Michael neglected or refused to provide proper or necessary education for the health, morals, or well-being of Laticia. And we find no plain error with regard to the juvenile court's finding that Stacy neglected Laticia's education. See

*M.C. v. Com.*, 347 S.W.3d 471 (Ky. App. 2011) (court not persuaded that good grades precluded finding of educational neglect; providing adequate education for child's well-being necessarily requires parent to ensure child attends school each day to participate in educational instruction; and mother's repeated inability to ensure child attended school each day presented threat of harm to child's welfare by denying child right to educational instruction).

*Reasonable Efforts*.

[12] Michael also argues that the juvenile court erred in finding that reasonable efforts were provided by the school to cure deficiencies leading to the alleged insufficient subsistence, education, or other care necessary for the health, morals or well-being of Laticia. In his brief, Michael acknowledges that § 79-209 is "not to be construed as having any relation to this 43-247(3)(a) filing," but he relies on § 79-209 to argue that the school failed to provide "reasonable efforts" to address Laticia's absenteeism. Brief for cross-appellant at 14. The school's duty to provide services in an attempt to address excessive absenteeism comes from § 79-209, relating to compulsory attendance and the possibility of a parent's being subjected to a criminal sanction. But Stacy and Michael are not being prosecuted for violating the compulsory education laws. They are alleged to have neglected Laticia or refused to provide her with the proper or necessary education under the juvenile code. The school had no duty to provide reasonable efforts before an adjudication under § 43-247(3)(a) of the juvenile code. See, generally, *In re Interest of Samantha C.*, 287 Neb. 644, ___ N.W.2d ___ (2014).

Stacy similarly argued that the school district failed to assist the family with attendance issues. Again, our review of Stacy's appeal is limited to an examination of the record for plain error, and we find no such error. See *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013).

To clarify further on the matter of "reasonable efforts" by the school under compulsory education laws and "reasonable efforts" by the State under the juvenile code, we note that the

juvenile code requires the State to make reasonable efforts to preserve and reunify families prior to placement of a juvenile in foster care to prevent or eliminate the need for removing the juvenile from the juvenile's home and to make it possible for a juvenile to safely return to the juvenile's home. Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2012). Reasonable efforts also come into play when termination of parental rights is sought under Neb. Rev. Stat. § 43-292(6) (Cum. Supp. 2012). There is no evidence in the record, and the parents do not argue, that Laticia was removed from her home, and no motion for termination of parental rights has been filed. Thus, any discussion of reasonable efforts under the juvenile code is not warranted at this time.

## CONCLUSION

For the reasons stated above, we find that the juvenile court properly adjudicated Laticia as a child under § 43-247(3)(a) because her parents neglected her education.

Affirmed.